IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-240-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| KENNETH CRAWFORD | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 621). The defendant seeks compassionate release, relying primarily on the threat posed by COVID-19 pandemic, coupled with his current medical conditions.

The government opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916

F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling

3

reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

It appears to this court that the defendant has fully exhausted his administrative remedies, and the government concedes the same. Therefore, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

5

*The Defendant's Motion for Compassionate Release*

The defendant contends that he suffers from the following medical conditions which might be exacerbated as a result of COVID-19: unspecified asthma, hypertension benign essential, hemorrhage of anus and rectum, breathing problems, and dental and sinus issues. Moreover, he previously had a diagnosis of gastroesophageal reflux (GERD) with esophagatis. Medical records indicate that the GERD condition is currently in remission. Nothing in the medical records reveals a diagnosis of obesity as the defendant asserts in his motion. The defendant was vaccinated for COVID-19 while incarcerated.

As the government observes in its brief (ECF No. 636), none of the conditions recited above are identified by the CDC as increasing a person's risk for developing serious illness from COVID-19. Although the CDC does list hypertension or high blood pressure and asthma as conditions that "might" increase the risk of illness from COVID-19, the defendant's medical records do not list his asthma as being "moderate to severe" and lists his hypertension as "benign." *Id*.

Several other courts have held that these conditions, or conditions substantially similar to these do not rise to the level of extraordinary and compelling reasons for immediate release. See, e.g., *United States v. Moye*, 2020 WL 6273905, at *2 (S.D.N.Y. Oct. 26, 2020) (Daniels, J.) ("Defendant's compassionate release request essentially asks this Court to find that any individual who has diabetes, hypertension, and asthma and is held in federal prison as experiencing extraordinary and compelling circumstances warranting release. That conclusion is not warranted."); *United States v. Mitchell*, 2020 WL 544703 (W.D. Ark. Feb.

6

3, 2020) (the defendant suffers from ordinary geriatric issues, including hypertension, gastroesophageal reflux disease, lower back pain, and benign prostatic hyperplasia, which do not prevent him from holding a job or providing self-care); *United States v. Mills*, 2020 WL 4589935, at *1 (E.D. Ark. Aug. 10, 2020) (Moody, J.) ("obesity, hypertension, chronic kidney disease, and cardiac disease are not 'extraordinary and compelling' reasons warranting release.")

On the record before it, this court concludes that the defendant has not demonstrated an extraordinary and compelling reason for his immediate release. Even if he had, however, this court would nevertheless exercise its discretion not to order the defendant's immediate release. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. In April 2014, the defendant and 9 others were indicted for various drug charges stemming from a court-authorized wiretap investigation. The defendant was specifically charged in the Superseding Indictment (ECF No. 194) with the following:

> Count 1:   Conspiracy to possess with intent to distribute and to distribute a kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851;
>
> Count 2:   conspiracy to commit money laundering, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 and 18 U.S.C. §§ 1956(a)(1)(A) and 1956(h); and

7

> Count 3: Importation of a controlled substance (to wit, 100 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance), in violation of 21 U.S.C. §§ 952, 960(a)(1), 960(b)(2), and 851 and 18 U.S.C. § 2.

The government filed an Information pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to enhanced penalties based upon his prior felony drug convictions, including a prior federal heroin conspiracy conviction in the District of Maryland. In January 2015, the defendant pleaded guilty pursuant to a written Plea Agreement (ECF No. 248) to Count 3, importation of 100 grams or more of heroin.

The defendant stipulated in his Plea Agreement that he had a prior felony drug conviction and an agreement between him and the government that a sentence of 120 months imprisonment was the appropriate sentence.

The United States Probation Office prepared a Presentence Report (PSR) (ECF No. 328) and determined that the defendant was personally accountable for 2.2 kilograms of heroin (2,260.2 grams), which resulted in a base offense level 30 (based upon at least 1 kilogram, but less than 3 kilograms of heroin). The defendant received a 3-level role enhancement, which brought the adjusted offense level to 33. After a 3-level reduction for acceptance of responsibility, the defendant's total offense level was 30. With a criminal history category III, defendant's guidelines range was 121 to 151 months imprisonment.

A sentencing hearing was held June 22, 2015, where the PSR was adopted without

objections. This court sentenced the defendant to 120 months imprisonment[1] with 8 years of supervised release to follow. The defendant did not file an appeal of his conviction or sentence.

The investigation in this case reveals that the defendant was involved in the importation of multi-ounce quantities of heroin into the United States and then supplying the heroin to other individuals for street distribution in Columbia, South Carolina. The investigation of the defendant's operation involved federal agencies in Kentucky, Ohio, New York, North Carolina, and South Carolina. The defendant was identified as a source of heroin supply for two individuals, Eric Bradley and Michael Glover. The defendant received quantities of heroin through mail parcel which he carefully had shipped to third parties in North and South Carolina. The heroin was hidden in packages involving such various items as children's books, DVDs, and in the seams of clothing. The operation began in 2009 and extended to 2014. The defendant's criminal conduct was therefore wide-ranging from a geographical and chronological standpoint.

2. *History and Characteristics of the Defendant*. The defendant is approximately 48 years old and is single, having never married. He has one adult child. He began abusing heroin in his 20s and continued to use 7 to 8 grams of heroin on a daily basis thereafter. Two of the medical conditions about which the defendant complains, acid reflux and asthma, pre-existed his sentencing in this case, as is reflected in the 2015 PSR in this case.

---

[1] The agreed-upon sentence resulted in a 1 month variance below the low end of the Guideline range.

This conviction represents the defendant's third drug conviction and his second federal drug conviction involving heroin. Defendant has an extensive history of convictions in Washington, D.C., Maryland, and South Carolina. Those convictions include: attempted distribution of cocaine (Washington, D.C. arrest date 1992; convicted 1993; parole expired 1997); possession with intent to distribute heroin and conspiracy to distribute and possess with intent to distribute heroin (United States District Court, District of Maryland; arrest date 2001; convicted 2002; released from custody 2007; supervision revoked 2010); manufacturing counterfeit DVDs (Richland County, South Carolina; arrest date 2008; convicted 2009; probation warrant issued 2013); and driving under the influence (Lexington County, South Carolina; arrest date 2009; convicted 2009).

The defendant has served approximately 67% of his sentence, for this, his second federal heroin conviction. He is scheduled to be released on February 3, 2023. He is located at the Petersburg Medium Federal Medical Complex in Virginia.

*Post Sentencing Conduct*

While incarcerated, the defendant has had the following disciplinary infractions:[2]

- June 28, 2020: fighting with another person (code 201)("inmate denied the charge. DHO upheld Code 201");

- July 3, 2019: possessing a hazardous tool (code 108)("DHO upholds charge");

- July 10, 2016: possessing unauthorized item (code 305)("UDC finds inmate guilty of 305-possession of anything not authorized"); and

---

[2] According to the BOP, 100-level offenses are the most serious; 200-level offenses are moderately serious; and 300-level offenses are the least serious.

- December 23, 2015: fighting with another person (code 201)("inmate admitted fighting. The DHO upheld the charges").

While serving his earlier federal sentence stemming from a separate heroin conspiracy, the defendant had the following disciplinary violations:

- May 22, 2005: refusing to obey an order (code 307)("guilty");

- March 11, 2005: refusing to obey an order, being insolent to staff member, and using abusive/obscene language (codes 307, 312, and 404)("inmate yelled and used abusive language towards unit mgr");

- January 26, 2005: fighting with another person (code 201)("found guilty/refused to make statement relative to the fight");

- February 4, 2004: being insolent to staff member (code 312)("admitted making an (sic) statement. Found to have been insolent towards staff member");

- January 23, 2004: making sexual proposal/threat (code 206A)("denied act. Found to have acted in a sexually threatening manner toward female staff").

- December 16, 2003: possessing unauthorized item (code 305)("loss of commissary for 60 days 12/19/03 – 02-16-2004 not guilty of 219 changed to 305"); and

- December 13, 2003: smoking in unauthorized area (code 332)("UDC lends greater weight to officers account of incident…inmate does admit to being in stall – but denies smoking").

Commendably, the defendant has taken a total of 19 vocational and educational courses while incarcerated. These courses included topics such as: problem solving, reading comprehension, spelling, vocabulary, math, social studies, and reading.

11

The defendant states in his motion that if he is released, he will reside in Washington, D.C.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant, especially in light of the defendant's past criminal conduct. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

CONCLUSION

For the foregoing reasons, the court determines that the defendant has not shown extraordinary and compelling reasons for his compassionate release. Even if the defendant had made such a showing, the court would nevertheless decline to modify the defendant's sentence in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The defendant's motion (ECF No. 621) is respectfully denied.[3]

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

January 7, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[3] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")